# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DOUGLAS OUSTERHOUT, M.D., D.D.S. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| vs. | ) | Hon. _____ |
| | ) | |
| MARK ZUKOWSKI, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MARK ZUKOWSKI, M.D., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS OUSTERHOUT, M.D., D.D.S., MIRA COLUCCIO, and SOUTHERN COMFORT CONFERENCE, INC., | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## DOUGLAS OUSTERHOUT, M.D., D.D.S.'S AND MIRA COLUCCIO'S MOTION TO COMPEL THIRD PARTY WITNESS DIANE ELLABORN TO PRODUCE DOCUMENTS AND PROVIDE TESTIMONY

Third party witness Diane Ellaborn, without a valid objection, refused to produce documents and respond to certain deposition questions as required by two subpoenas served on her: (1) the September 10, 2015 subpoena to produce documents (*See* Ex. A) (the "Documents Subpoena"), and (2) the amended November 6, 2015 subpoena for testimony (*See* Ex. B) (the "Testimony Subpoena") (collectively, the "Subpoenas"). Given the information's importance, Douglas Ousterhout, M.D., D.D.S., and Mira Coluccio, pursuant to Fed. R. Civ. P. 37 and 45, request that this Court order Ellaborn to produce the responsive documents and provide the requested testimony. In support of this Motion, Ousterhout and Coluccio state as follows:

## The Underlying Case and the Importance of Ellaborn's Information

1. Ousterhout filed the underlying case on December 23, 2011 in the United States District Court for the Northern District of Illinois claiming that Defendant Mark Zukowski, M.D., defamed Ousterhout at a conference in 2011 known as First Event during a panel presentation (the "First Event Panel"). Zukowski filed a counterclaim and third party complaint against Ousterhout, Coluccio and Southern Comfort Conference, Inc., claiming, in part, that Coluccio defamed Zukowski at the same First Event Panel. (Copies of the currently active First Amended Complaint and Fifth Amended Counterclaim and Third-Party Complaint are attached hereto as Exs. C and D.) A key issue in the case is what occurred at the First Event Panel.

2. The First Event Panel was moderated and run by Ellaborn.

3. Shortly after the conference, Ellaborn sent a condolence card to Ousterhout (who had to miss the First Event Panel due to a death in his family), in which she (a) noted the "inappropriate attack by Dr. Z[ukowski]" at the First Event Panel, (b) stated that she had warned Zukowski "ahead to <u>only</u> talk about his own work and had to tell him to end his presentation on" the First Event Panel, (c) reported that the feedback she received "universally from participants is that [Zukowski] lost all credibility by attacking [Ousterhout's] work and reputation," (d) apologized that Coluccio (who was on the First Event Panel in Ousterhout's stead) "was put in this position," (e) assured Ousterhout that "this <u>will not</u> happen at First Event again," (f) relayed that "attendees of the event all said to me they perceive [Zukowski] as unprofessional and totally inappropriate," (g) stated that she "wholeheartedly agree[d]" with those sentiments, and (h) extended her apologies to Ousterhout and Coluccio. (Ex. E; emphasis in original.)

4. Notwithstanding those statements, over four years later, on August 25, 2015, Ellaborn executed a declaration in this case (the "Declaration," a copy of which is attached as

Ex. F) in which she completely changed her position about what occurred at the First Event Panel based on subsequent (2015) conversations with "people that I trust." (*See* Ex. F at ¶¶ 12, 14–17.)

5. In fact, Ellaborn subsequently testified that the *only* basis for the change in her story is what these three people told her, not any personal knowledge or recollection. (*See* Ex. G: Excerpts from the Deposition of Ellaborn at 131–32; 188–89.)

6. As a result of the Declaration, Ousterhout and Coluccio sought information from Ellaborn regarding the Declaration and other relevant topics, including, but not limited to, the identities and contact information of the trusted people who caused her to renege her position, the contact information for another person Ellaborn knows – Lida Lovalace – and whose name appears on an email discussing the First Event Panel (*See* Ex. H: Email dated April 11, 2011), and the substance of conversations Ellaborn had about the First Event Panel with Cheryl Jensen, who Zukowski identified in his 26(a)(1) disclosures as a potential witness. (*See* Ex. I: Zukowski's 26(a)(1) Disclosures at 5.) Ellaborn has failed and refused to provide this information.

### Ellaborn's Refusal to Comply With The Subpoenas At Issue

7. For the past six months, Ellaborn has refused to comply with the Subpoenas and has failed to produce or provide (1) the identities and contact information for the three people she trusts that she references in her Declaration (Ex. F at ¶¶ 12, 16; Ex. G at 95–98, 188), and (2) the contact information for Lida Lovelace (Ex. G at 120, 149, 151), citing unidentified "confidentiality laws," notwithstanding the confidentiality order (*See* Ex. J) entered in the underlying case, and counsel's offer to seek other orders to protect Ellaborn's concerns. Ellaborn also refused to provide testimony about whether she had a, and if so the substance of

her, discussion with another person, Cheryl Jensen, about the First Event Panel. (Ex. G at 157–58.)

8. On September 11, 2015, Ousterhout and Coluccio served the Documents Subpoena on Ellaborn. The Documents Subpoena directed Ellaborn to produce:

> All documents relating to, regarding or evidencing the Declaration you signed in the Litigation on or about August 25, 2015, including, but not limited to ... correspondence, drafts, edits, notes, faxes, fax cover sheets, emails, telephone messages, **documents identifying the people referred to therein as "people that I trust," notes of the conversations referenced therein**, and/or cover letters.

(*See* Ex. A at Rider, ¶ 13; emphasis added.)

9. On September 22, 2015, Ellaborn responded that she would not comply because she "cannot disclose the names of people I referred to as 'people I trust' due to confidentiality laws." (*See* Ex. K: Ellaborn's Response to the Documents Subpoena.)

10. The next day, on September 23, 2015, counsel for Ousterhout and Coluccio, Peter T. Berk, conferred with Ellaborn over the phone in an attempt to make a good faith effort to resolve or narrow the issues in dispute in connection with the Documents Subpoena. Because Ellaborn expressed concerns about revealing the names of the people she referenced in her Declaration, Counsel attempted to resolve those concerns by assuring Ellaborn that he was not asking for any information about whether such people were patients or had any medical procedures. Counsel further informed Ellaborn of the HIPAA and confidentiality orders entered into the underlying case and provided copies of the two orders for her review. (*See* Ex. L: September 24, 2015 Letter to Ellaborn.)

11. Ellaborn still refused to comply with the Documents Subpoena.

12. Subsequently, on November 6, 2015, Ousterhout and Coluccio served the Testimony Subpoena on Ellaborn. Pursuant to the Testimony Subpoena, Ellaborn was deposed on November 16, 2015 in Framingham, MA. (*See* Ex. G.)

13. Ellaborn refused to cooperate and provide testimony at several points in her deposition. Ellaborn testified that she talked to three people in connection with the statements in her Declaration regarding the "people that [she] trust[s]." *Id.* at 95. She insisted, however, that she "can't reveal their names because of privacy and confidentiality," that "it would be unethical for [her] to reveal their names," and that a court order allowing her to reveal the names under HIPAA would not be sufficient to satisfy her concerns. *Id.* at 95–97.

14. Ellaborn further testified that she was not willing to provide the information despite the confidentiality order entered in the underlying case. *Id.* at 98. Ellaborn also refused to answer questions regarding persons named "Lita [*sic*] Lovelace" or "Cheryl Jensen."[1] Ellaborn claimed that she was "not comfortable answering," was "not comfortable talking about this person," did not "feel comfortable answering," or she was "not answering that question," regardless of the confidentiality order. *Id.* at 120, 149, 151, 158.

15. On March 4, 2016, Mr. Berk again attempted to confer with Ellaborn, but she did not answer the phone and Mr. Berk left a voicemail. When the voicemail was not returned, Mr. Berk sent a letter to Ellaborn in which he reiterated the effect of the Confidentiality Order entered in the case and offered to seek an order under HIPAA to further alleviate her concerns or consider other reasonable options and suggestions to resolve these issues, and asked Ellaborn to contact him. (*See* Ex. M: March 8, 2016 Letter to Ellaborn.)

16. Shortly thereafter, on March 9, 2016, Mr. Berk and Ellaborn participated in a telephone conference in another attempt to resolve the issues. (*See* Ex. N: March 9, 2016 Letter to Ellaborn.) Ellaborn repeated her reluctance to produce the information regarding the three

---

[1] Ellaborn refused to even state the reason she would not discuss her conversation with Ms. Jensen. (Ex. G at 158 (Q: Is that for the same reasons we've discussed for the other people?" A: "I am not answering that question.").) Thus, counsel could not even attempt to address this concern or confer in good faith to resolve it.

5

people mentioned in her Declaration. Counsel again offered to seek an appropriate HIPAA Order if it would allow Ellaborn to produce the requested information. Ellaborn responded that she would review the Confidentiality Order with an attorney.

17. Neither Ellaborn nor her attorney have contacted Mr. Berk since, despite Mr. Berk sending Ellaborn an additional request to confer to seek a resolution of the issues. (*See* Ex. O: March 17, 2016 Letter to Ellaborn.)

18. Ousterhout and Coluccio have now spent over six months attempting to learn the names of the three people that Ellaborn relies on and references in her Declaration and other information Ellaborn refuses to provide. Ousterhout and Coluccio have bent over backwards to accommodate Ellaborn and made repeated attempts to confer and resolve Ellaborn's confidentiality concerns to avoid burdening this Court with a motion to compel.

19. Ellaborn's continued refusal to comply with the Subpoenas has caused and will cause Ousterhout and Coluccio prejudice as they cannot (a) investigate or seek to impeach the basis for Ellaborn's sudden change in position (*compare* Ex. E *with* Ex. F) regarding the events at the First Event Panel, which she admits is based *solely* on the conversations with the three people she "trusts", (b) contact Ms. Lovelace, a potential additional witness, who communicated information about the panel at issue to Southern Comfort Conference (another defendant in this case) (Ex. H), and (c) fully investigate a conversation Ellaborn may have had with Cheryl Jensen regarding the First Event Panel. (*See* Ex. G at 131–32; 188–89.)

20. Consequently, this Court should compel Ellaborn to comply with the Subpoenas because the Subpoenas seek relevant information that is critical to Ousterhout and Coluccio's claims, the information requested is narrowly tailored in scope and does not impose an undue burden on Ellaborn, and Ellaborn's confidentiality objections are without merit given the orders

entered by the United States District Court for the Northern District of Illinois in the underlying case.[2]

21. For the reasons set forth herein, Ousterhout and Coluccio respectfully request that this Court order Ellaborn to produce documents and appear for a continued deposition and answer the questions she refused to answer, including, but not limited to, (1) the identities and contact information for the three people she trusts and referenced in her Declaration, (2) the contact information for Lida Lovelace, and (3) details about any discussion she had with Cheryl Jensen regarding this matter, as well as require Ellaborn to answer reasonable follow-up questions about the documents produced and/or answers given pursuant to such an order, as well as grant such further relief as may be appropriate or necessary.

### REQUEST FOR ORAL ARGUMENT

22. Pursuant to Local Rule 7.1(d), Ousterhout and Coluccio respectfully request oral argument on their motion to compel Ellaborn to produce documents, information, or deposition testimony pursuant to the Subpoenas.

Respectfully submitted,

DOUGLAS OUSTERHOUT, M.D., D.D.S. and
MIRA COLUCCIO

By: /s/ Christopher R. O'Hara
Christopher R. O'Hara (BBO # 548611)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
cohara@toddweld.com

Dated: April 11, 2016

---

[2] To the extent necessary, Ousterhout and Coluccio do not object to the entry of a standard HIPAA order if that will allow Ellaborn to provide the requested information.

Peter T. Berk, Esq. (*pro hac vice pending*)
Funkhouser Vegosen Liebman & Dunn, Ltd.
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603
Phone: (312) 701-6800
Fax: (312) 701-6801

## LOCAL RULE 7.1 CERTIFICATE

I, Peter T. Berk, hereby certify that, on behalf of Plaintiff/Counter-Defendant Douglas Ousterhout, M.D., D.D.S., and Counter-Defendant Mira Coluccio, apart from the discussion during her deposition, I conferred with Diane Ellaborn on the subject of this motion to compel on September 23, 2015, and March 9, 2016, and despite good faith efforts, we were unable to resolve or narrow the issues in discovery dispute. I further certify that Ellaborn failed to respond to the most recent request, made on March 17, 2016, to confer regarding these issues.

/s/ Peter T. Berk
Peter T. Berk